UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Judah Herzel Henkin                           :
1 Nurok Street                                :
Jerusalem, 96109 Israel                       :
                                              :        Civil Action No. _____
and                                           :
                                              :
Anne Chana Henkin                             :
1 Nurok Street                                :
Jerusalem, 96109 Israel                       :
                                              :
and                                           :
                                              :
Aderet Rivkah Henkin                          :
Tirosh 556/17                                 :
Jerusalem, 96357 Israel                       :
                                              :
and                                           :
                                              :
Eliashir Elijah Henkin                        :
Kiryat Moshe 15,                              
Jerusalem 9610219 Israel                      :
                                              :
and                                           :
                                              :
Jacob Bechor-Shalom Henkin                    :
1 Nurok Street                                :
Jerusalem, 96109 Israel                       :
                                              :
and                                           :
                                              :
Joseph Gil Henkin                             :
Carmel 20                                     :
Elkana, 44814, Israel                         :
                                              :
and                                           :
                                              :
Taama Freida Henkin Yaakovson                 :
P.O. Box 158                                  :
Mitzpe Yericho, 90651                         :
                                              :
                Plaintiffs                    :

|  | : |
| v. | : |
|  | : |
| THE ISLAMIC REPUBLIC OF IRAN | : |
| Ministry of Foreign Affairs | : |
| Khomeini Avenue | : |
| United Nations Street | : |
| Tehran, Iran | : |
|  | : |
| and | : |
|  | : |
| THE SYRIAN ARAB REPUBLIC | : |
| Ministry of Foreign Affairs | : |
| Damascus, SYRIA | : |
|  | : |
| Defendants. | : |
|  | : |

## **COMPLAINT**

1.      This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and, as appropriate, and the legal heirs thereof, and as more particularly described in the caption of this action for their own benefit, and for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act 28 U.S.C. § 1605A(c). Plaintiffs, by counsel, respectfully bring this action against Defendants Islamic Republic of Iran ("Iran") and the Syrian Arab Republic ("Syria") jointly and severally. This matter is related to, *inter alia*, *Botvin, et al. v. Islamic of Republic of Iran, et al.*, Civil Action No. 05-220 (RCL) (D.D.C.) ("Botvin I Case"); *Goldberg-Botvin, et al. v. Islamic of Republic of Iran*, Civil Action No. 12-1292 (RCL) (D.D.C.) ("Botvin II Case"); *Roth, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 11-01377 (RCL) (D.D.C.) ("Roth Case"); *Baxter, et al. v Islamic Republic of Iran, et al.* Civil Action Nos. 11-02133 (RCL) (D.D.C.) ("Baxter Case"); and *Steinberg, et al. v. Islamic Republic of Iran, et. al.* Civil Action No. 17-1910 (RCL) (D.D.C.) ("Steinberg Case") in that it involves Iranian and Syrian sponsorship of the

same terrorist organization, the Islamic Resistance Movement ("HAMAS") which has resulted in the death and injuries of American citizens.

## JURISDICTION, VENUE, AND CHOICE OF LAW

2.      This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A.

3.      Defendant Islamic Republic of Iran has been designated as a State Sponsor of Terrorism by the United States Department of State, and continues to have been so designated since 1984 to the present day.

4.      Defendant Syrian Arab Republic has been designated as a State Sponsor of Terrorism by the United States Department of State, and continues to have been so designated since 1979 to the present day.

5.      Defendants Iran and Syria are subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A ("FSIA").

6.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign State may be brought in the United States District Court for the District of Columbia.

7.      Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents within the meaning of 28 U.S.C. § 1605A(c) are unique causes of actions arising out of federal counterterrorism statute(s) and are controlled by applicable federal law.

## THE PARTIES

### A.  The Plaintiffs

8.      This action is brought by the Plaintiffs, by and through their counsel, in the

individual capacity of each Plaintiff and on behalf of all those legally entitled to assert a claim under the FSIA as the survivors, family members and/or heirs of Eitam Simon Henkin, a United States citizen.

## The Henkin Family

9.      Eitam Simon Henkin was murdered on October 1, 2015 by a terrorist attack committed by HAMAS, a Foreign Terror Organization.   At the time of the acts alleged, and at all other times relevant hereto, Eitam Simon Henkin was a citizen of the United States and at all times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

10.      Plaintiff Judah Herzel Henkin was, and at all times relevant hereto, the biological father of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Judah Herzel Henkin can sue and be sued in this Court.

11.      Plaintiff Anne Chana Henkin was, and at all times relevant hereto, the biological mother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Anne Chana Henkin can sue and be sued in this Court.

12.      Plaintiff Aderet Rivkah Henkin Stern was, and at all times relevant hereto, the biological sister of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Aderet Rivkah Henkin Stern can sue and be sued in this Court.

13.      Plaintiff Eliashir Elijah Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Eliashir Elijah Henkin can sue and be sued in this Court.

14.      Plaintiff Jacob Bechor-Shalom Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Jacob

Bechor-Shalom Henkin can sue and be sued in this Court.

15.  Plaintiff Joseph Gil Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Joseph Gil Henkin can sue and be sued in this Court.

16.  Plaintiff Taama Freida Henkin was, and at all times relevant hereto, the biological mother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Taama Freida Henkin can sue and be sued in this Court.

**B.  The Defendants**

17.  Defendants Islamic Republic of Iran and Syrian Arab Republic are jointly and severally liable to Plaintiffs for all of their damages to the fullest extent of the law.

**The Islamic Republic of Iran**

18.  Defendant Islamic Republic of Iran is a foreign state that has been designated and continues to remain designated as a State Sponsor of Terrorism pursuant to § 60 of the Export Administration Act of 1979 (50 U.S.C. App. § 2405) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since January 19, 1984.  Iran, at all times pertinent to this action, provided and continues to provide material support and resources to HAMAS, in aid and support of its violent campaign against the State of Israel, a member-state of the United Nations, and close ally of the United States ("Israel").

19.  Iran, through its actions, caused the death and injuries described herein, within the meaning of 28 U.S.C. § 1605A, by providing HAMAS with funding, direction, material support, encouragement, safe haven and/or training for its terrorist activities.

20.  Defendant Iran is liable for the actions of HAMAS and its agents.

**Syrian Arab Republic**

21.     Defendant Syrian Arab Republic is a foreign state that has been designated and continues to remain designated as a State Sponsor of Terrorism pursuant to § 60 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since December 29, 1979.  Syria, at all times pertinent to this action, provided and continues to provide material support and resources to HAMAS, in aid and support of its violent campaign against the State of Israel, a member-state of the United Nations, and close ally of the United States.

22.     Syria, through its actions caused the death and injuries described herein, within the meaning of 28 U.S.C. § 1605A, by providing HAMAS with funding, direction, material support, encouragement, safe haven and/or training for its terrorist activities.

23.     Defendant Syria is liable for the actions of HAMAS and its agents.

**STATEMENT OF FACTS**

24.     Several prominent terrorist organizations operate in the Palestinian territories administered by the State of Israel and/or the Palestinian Authority and located on the West Bank of the Jordan River and in Gaza, the most notable of them all of which is HAMAS. HAMAS' committed widespread terrorist attacks during the First Intifada (1987 - 1993), the Second Intifada (2000 - 2005), before, during and since their violent takeover of the Gaza Strip in June 2007 following Israel's withdrawal from Gaza in 2005-6, and their subsequent and continuing terror attacks upon innocent citizens, residents and civilians living in and visitors to the State of Israel.

25.     HAMAS is the Islamic Resistance Movement and is a primarily radical Islamist

terrorist organization that is committed to the globalization of Islam through violent "Jihad", which means "holy war".

26.     HAMAS is formally committed to the destruction of the State of Israel, a sovereign nation, is extremely anti-American, rejects achieving a peaceful resolution between Israel and the Palestinians and is committed to achieving its objectives by violent means, including acts of international terrorism.

27.     HAMAS is an acronym for "Harakat Muqawama Islamiyya," which was founded in December 1987.

28.     The HAMAS political documents calls for an Islamic Palestinian state throughout and in place of Israel by eliminating the State of Israel through violent jihad.

29.     HAMAS propaganda since the September 11, 2001 World Trade Center attacks has praised and glorified Osama bin Laden and his supporters engaged in global jihad.

30.     Through its military wing, Izz ad-Din al-Qassam Brigades, HAMAS commits criminal activity, including murder, attempted murder, solicitation to commit murder, and numerous other acts of international terrorism, as defined by 18 U.S.C. § 1331, in violation of the criminal code of the United States.

31.     On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist organization and, on October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act as amended by the Antiterrorism and Effective Death Penalty Act of 1996. HAMAS is also designated as a Specially Designated Global Terrorist Organization.

32.     On repeated occasions and over a prolonged period of time, HAMAS has

launched thousands of rockets into Israel, causing loss of life and destruction of property. HAMAS also has dug terror fences under Gaza in order to infiltrate the State of Israel to commit attacks upon Israeli citizens and the many American and other visitors to and residents of Israel. HAMAS has also committed kidnapping and hostage taking in order to put pressure on the Israeli and American governments, consistent with its rejectionist and terror activities.

33.     Between 1999 and the dates of the terrorist attack at issue in this case, the courts of the United States, including this Court, have published a number of decisions finding that HAMAS was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

34.     In the summer of 2014, HAMAS again dramatically escalated its terrorist activities, including rocket launchings, hostage-taking, shootings and actualizing terror threats in Israel.

35.     The terrorist attacks which HAMAS initiated include, but are not limited to,

a. On June 12, 2014, HAMAS kidnapped three teenaged boys at a bus stop in the West Bank. This kidnapping was the first of many actions HAMAS undertook to launch and maintain an escalated campaign of terror in the summer of 2014. Saleh Arouri, founder and commander of Izz ad-Din al-Qassam Brigades, HAMAS' military wing, claimed that the kidnapping was an attempt to spark another intifada. Among those kidnapped and murdered was American, Naftali Frankel.

b.     On October 22, 2014, an agent and operative of HAMAS, Abdel Rahman drove a car to the Ammunition Hill light rail station in Jerusalem with the intention of causing injury and/or death to Israeli civilians by traveling at high speed and ramming his vehicle into them.  As a group of passengers, was departing he Ammunition Hill station, the HAMAS operative drove

onto the light rail tracks and rammed his vehicle into the crowd of pedestrians.  Among those killed, was a 3 month old American citizen who was being pushed in a stroller by her parents.

c.      On October 13, 2015, agents and operatives of HAMAS, Bilal Abu-Ghanem and Bahaa Allyan, one armed with a gun and the other with a knife, boarded Jerusalem Bus number 78 and, acting on behalf of HAMAS, began shooting and stabbing the passengers.  Among those who were fatally wounded was American, Richard Lakin who succumbed to his wounds two weeks after the fatal attack.

d. On March 8, 2016, an agent and operative of HAMAS, Bashar Mohamed Massalha, aided and abetted by another HAMAS agent and operative, Muhammad Awieda, arrived with a knife at the Jaffa boardwalk, just south of Tel Aviv, and, acting on behalf of HAMAS, began stabbing pedestrians.  Among those killed was 29-year-old Taylor Force, an American student who was travelling in Israel as a tourist as part of a cultural exchange program.

36. During the First Intifada and Second Intifada, HAMAS carried out hundreds of terrorist attacks in which they intentionally injured and killed American citizens through suicide bombings, shootings and a wide variety of terror activities.  The Israeli Ministry of Foreign Affairs has reported that since September 2015, 62 innocent people have been killed in terrorist attacks and 899 individuals have been wounded. http://mfa.gov.il/MFA/ForeignPolicy/Terrorism/Palestinian/Pages/Wave-of-terror-October-2015.aspx

## THE MURDER OF EITAM SIMON HENKIN WAS AN ACT OF INTERNATIONAL TERRORISM

37.      On October 1, 2015, Eitam Simon Henkin, an American citizen, his wife and four children were driving past the town of Beit Furik when he and his wife were shot and killed.

38.     The death of Eitam Simon Henkin on October 1, 2015 was committed by HAMAS, a Foreign Terrorist Organization, with the material aid and support of Defendants Iran and Syria, and was an act of international terrorism.

39.     Eitam Simon Henkin, his wife and four children were driving in their van past the town Beit Furik when the vehicle was overtaken by three assailants, who shot and wounded Eitam Simon Henkin and his wife. After the vehicle was stopped, the assailants came to the car. After a struggle between Eitam Simon Henkin and one of the assailants, he and his wife were shot and killed in front of their children.

40.     An investigation revealed that the attack upon Eitam Simon Henkin was carried out by a HAMAS cell. The assailants who planned and conducted the attack were HAMAS operatives Yahia Mihammed Naif Abdullah Hajj Hamad, Samir Zahor Ibrahim Kusah, Karem Lufti Fatahi Razek, Zir Ziad Jamal Amar and Ragheb Ahmad Muhammad Aliwi. Each were arrested and indicted for murder, confessing to the murders and providing details of the attack.

41.     Following the attack, on October 2, 2015 HAMAS leader Mushi al-Masri praised the attack as a "heroic operation" and as a "natural response to the crimes of the enemy."

42.     HAMAS was neither a sovereign entity nor *de facto* government at all times relevant hereto.

## IRAN'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

43.     The Islamic Republic of Iran has used and continues to use terror as a means of attempting to accomplish its foreign policy and uses terror organizations, such as HAMAS, Hezbollah and other terror organizations as its tools to commit the terror attacks.  This has been determined by the US Department of State, which designated the Islamic Republic of Iran in

1984 as a State Sponsors of Terrorism, a status that has been continuously maintained since that time.  Numerous US District Court Judgments have been entered against Iran for supporting and sponsoring terror against Americans.

44.    The Islamic Republic of Iran is a republic in name only. In reality, it is a theocracy headed by a single cleric holding the title of Supreme Leader who has nearly complete control of the country's policies and actions. Externally it appears to be a democratic regime with regular elections, but the truth is that the Supreme Leader is a dictator.

45.    The constitution gives the Supreme Leader the responsibility to set the general policies of Iran, including domestic and foreign policies.

46.    The Supreme Leader also is commander-in-chief of the armed forces, controls the intelligence and security operations, appoints leaders of the judiciary, state radio, and state television networks, and is supreme commander of the Islamic Revolutionary Guard Corps (IRGC).

47.    The Supreme Leader appoints half of the Council of Guardians, the body that oversees the Parliament, ensures laws are in compliance with Sharia Law, and determines which candidates are qualified to run for public office.

48.    The Supreme Leader, by and through his independent appointments, effectively controls what laws are passed and who is allowed to run for office.

49.    The first Supreme Leader, Ayatollah Ruhollah Khomeini, assumed power in 1979 after a popular uprising. He instituted clerical rule and established the modern Iranian constitution that establishes a Supreme Leader as the real head of the state.

50.    Khomeini ruled until his death on June 4, 1989.

51.    Seyyed Ali Khamenei was selected by the Assembly of Experts, an 86-cleric

assembly, to be the second, and current, Supreme Leader in August 1989.

52.     Since his ascension to Supreme Leader, Khamenei has continued and expanded Khomeini's ideology of terrorism as an important tool of foreign policy.

53.     The Islamic Republic of Iran supports such Foreign Terrorist Organizations as HAMAS, HIZBALLAH (also spelled HEZBOLLAH), and PALESTINIAN ISLAMIC JIHAD. Iran is publicly committed to the destruction and annihilation of the State of Israel, demonizes Israel at the United Nations and in the court of public opinion and supports international terror in pursuit of its political goals against both Israel and the United States of America.  Support for HAMAS from Iran territory or Iran government actors, on the scale required to facilitate, support, arm, embolden and encourage HAMAS, could not have been accomplished without the explicit authorization of the Iranian government and Iranian Military Intelligence through Supreme Leader Ali Khamenei.

54.     Iran has an extensive history of funding and supporting HAMAS terrorism with the goal of murdering citizens of the United States. A few of those attacks include, but are not limited to:

 a.  The Ben Yehuda Street bombing on September 4, 1997, in which three HAMAS operatives entered a crowded pedestrian mall in Jerusalem and detonated their suicide bombs killing five people and injuring nearly 200, including the American citizen Yael Botvin. This Court found Iran liable for funding, aiding, and supporting the HAMAS terrorists in the matter of *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232 (D.D.C. 2012).

 b.  The Sbarro restaurant bombing on August 9, 2001, in which a HAMAS operative detonated a bomb that he carried in a guitar case, killing fifteen people including

at least two American citizens, one of whom was Malki Roth. This Court found Iran liable for the material support and training they provided to the HAMAS terrorist in the matter of *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015).

c.   The April 30, 2003, suicide bombing at Mike's Place, a music club in Tel Aviv, Israel. A HAMAS suicide bomber detonated his explosives inside Mike's Place, a popular club next to the US Embassy to Israel and frequented by many tourists and US Embassy personnel.

d.   On July 20, 2014, Max Steinberg, an American citizen who had moved to Israel on September 11, 2012 to help in the response to the terror being waged against Israel, and who was serving in the Golani Brigade of the IDF, went to search for rocket launchers and terror tunnels in Gaza City, in keeping with his mission to help stop terror. While Max was in Gaza City for this counter-terrorism effort, a member of HAMAS shot at and hit Max's vehicle with an anti-tank rocket. Max was killed by the terrorists' rocket attack.

55.   The Islamic Republic of Iran was designated by the United States Department of State on January 19, 1984 as a State Sponsor of Terrorism and continues to be so designated to the present day.  As such, Iran can be sued in this Court for providing material support to terror organizations which commit acts of international terror against Americans abroad.

56.   HAMAS is an international terrorist organization. It receives material support from Iran, Syria, and others. During the period relevant hereto, Defendant Iran provided HAMAS and its operatives with training bases, facilities, funding, and other material support for its terror activities. These training bases and facilities were located outside Tehran, Iran, in Dara Kazwin.

57.     HAMAS and its operatives utilized the training bases and facilities provided by Iran to train for the commission of acts of terrorism. This training included the use of firearms, explosives, and other weapons.

58.     HAMAS and its operatives also utilized these bases and facilities, *inter alia,* as depots for storage of weapons and explosives, to establish, maintain and operate a leadership command, organizational hierarchy and/or operational infrastructure, and/or offices/headquarters.

59.     Additionally, at all times relevant hereto, Iran provided HAMAS and its operatives with funding and training in terrorism activities, including training on the use of weapons and explosives.

60.     Upon information and belief, the training in terrorism activities was provided by and through Iran military and intelligence officials, and other agents, employees and officials of Defendant Iran.

61.     Upon information and belief, at all times relevant hereto, Defendant Iran also provided HAMAS and its leaders, officials, and operatives, with lodging, safe haven, and shelter permitting them to conduct their terrorist activities freely and unhindered.

62.     The duration, quantity, and quality Iran's material support, even if not designated for specific attacks, greatly contributed to HAMAS' ability to carry out terrorist attacks.  HAMAS could not have carried out the lethal attack described in this complaint without Iran's support and sponsorship. Iran and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks, yet continue to support HAMAS to this very day.

63.     Therefore, as a direct and proximate result of the provision of the material support to HAMAS by the Defendant Iran as described herein, hundreds of innocent civilians were killed

and grievously injured by acts of terrorism committed by HAMAS.   Among the civilians murdered and wounded by HAMAS' terrorist attacks committed with the material support of the Islamic Republic of Iran was Eitam Simon Henkin, whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages for the heinous act of terrorist murder committed upon the deceased and each of the Plaintiffs, in amounts as shall be proven at the trial of the within action.

## SYRIA'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

64.     The Syrian Arab Republic has used and continues to use terror as a means of attempting to accomplish its foreign policy and uses terror organizations, such as HAMAS, Hezbollah and other terror organizations as its tools to commit the terror attacks.  This has been determined by the US Department of State, which designated the Syrian Arab Republic in 1979 as a State Sponsors of Terrorism, a status that has been continuously maintained since that time. Numerous United States District Court Judgments have been entered against Syria for supporting and sponsoring terror against Americans.

65.     The Syrian Arab Republic is a republic in name only. In reality, it is a dictatorship and police state that strategically exhibits only the external forms of a democratic regime.

66.     Until a February 2012 referendum, its constitution vested one particular party – the Arab Socialist Ba'ath Party –with leadership functions in the State and society.

67.     Despite the constitutional referendum, the President still has the power to issue laws, and controls the legislative process.

68.     In 1966, Syrian Ba'athists conducted a coup d'état. The Ba'athists eliminated all political parties in opposition. Hafez Al-Assad was appointed Minister of Defense.

69.     In 1970, Hafez Al-Assad led another coup, in which the Ba'ath party was purged of internal opposition, its leaders were jailed, and Hafez Al-Assad installed as President of the police state.

70.     The Al-Assad family has controlled the Syrian regime without interruption for forty-seven (47) years, since approximately 1970.

71.     Hafez Al-Assad had a three-decade Presidency, lasting from 1970 to 2000, in which he was confirmed President in unopposed referenda five consecutive times.

72.     He was succeeded by his son Bashar Al-Assad in 2000. Bashar Al-Assad was confirmed as President, leader of the Ba'ath Party and leader of the Army, for a 7-year term, by an unopposed referendum held in 2001 in which he claimed 97.2% of the vote.

73.     He was re-appointed in another unopposed referendum in 2007, this time claiming 97.6% of the vote.

74.     In 2014, Bashar Al-Assad was reelected to a third 7-year term, claiming 88.7% of the vote with polling only allowed in government-held territory.

75.     Members of President Al-Assad's own minority sect, the Al-Awali clan, control most key positions in the Syrian military and Syrian intelligence and security services.

76.     The Ba'ath Party, controlled by Al-Assad, is in control of the Syrian military, intelligence and security services, the latter consuming a large share of Syria's economic resources.

77.     President Al-Assad and his senior aides in the Syrian military and Syrian intelligence and security services make most important decisions in Syrian political and economic life.

78.     There are more than a dozen security services in Syria, some overlapping in their

domains, to make sure that the whole of Syrian territory is covered. These security services answer directly to President Bashar Al-Assad and his brother General Maher Al-Assad, commander of the Syrian Republican Guard.

79.     Syria is a dictatorship which is committed to the destruction of the State of Israel and which uses the providing of material support for acts of terror as a means of expressing its political opposition to Israel and the United States of America.

80.     Syria provides extensive material support for HAMAS as part of its network of terror supporting activities in opposition to Israel and the United States of America.

81.     The Syrian Arab Republic was designated by the United States Department of State on December 29, 1979 as a State Sponsor of Terrorism and continues to be so designated to the present day.   As such, the Syrian Arab Republic can be sued in this Court for providing material support to terror organizations which commit acts of international terror against Americans abroad.

82.     Support for HAMAS from Syrian territory or by Syrian government actors, on the scale required to facilitate HAMAS, could not have been accomplished without the explicit authorization of the Syrian government and Syrian Military Intelligence through President Al-Assad.

83.     U.S. Department of State Bulletin 87, published in 1987 [Feb. 1987:73]  states: "[a]vailable evidence indicates that Syria prefers to support groups whose activities are generally in line with Syrian objectives rather than to select targets or control operations itself. Damascus utilizes these groups to attack or intimidate enemies and opponents and to exert its influence in the region. Yet at the same time, it can disavow knowledge of their operations. Such Syrian-supported groups have carried out scores of attacks against Palestinian and other Arab, Turkish,

Israeli, and Western targets…".

84.    The Bulletin lists many examples of Syrian sponsorship of terrorism and terrorist organizations.

85.    Syria has an extensive history of funding and supporting HAMAS terrorism with the goal of murdering citizens of the United States and of Israel. A few of those attacks include, but are not limited to:

a.  The June 12, 2014, kidnapping and murder of three boys, two Israelis and one American, Naftali Frankel. The boys were kidnapped by HAMAS operatives at a junction inside the territory under the control of the State of Israel in Alon Shvut, an Israeli community southwest of Jerusalem, on their way home from school. After eighteen (18) days of intense searching, their bodies were discovered on the property of the head of the HAMAS cell that orchestrated the kidnapping and murders.

b.  The October 22, 2014, vehicular attack by Abdel Rahman Shaludi, an agent and operative of HAMAS. Abdel drove a car to a light rail station in Jerusalem where he intentionally drove onto the tracks and rammed his vehicle into the crowd of people attempting to kill as many pedestrians as possible. Among the crowd was an American baby, Chaya Zissel Braun, who was in a stroller when it was struck by the car. Chaya was thrown into the air before landing her head on the pavement; Chaya was pronounced dead two hours later in a nearby hospital.  This Court found Syria liable for the material support and training they provided to the HAMAS terrorist in the matter of *Braun v. Islamic Republic of Iran, et al.*, 228 F. Supp. 3d 64 (D.D.C. 2017).

86.     HAMAS is an international terrorist organization and has been designated as a Foreign Terrorist Organization by the United States Government. It receives material support from Syria, Iran, and others. During the period relevant hereto, Defendant Syria provided HAMAS and its operatives with training bases and facilities. These training bases and facilities were located within Syria, and in areas of Lebanon including in the Bakaa Valley occupied by and under the complete control of Syria.

87.     HAMAS and its operatives utilized the training bases and facilities provided by Syria to train for the commission of acts of terrorism. This training included the use of firearms, explosives, and other weapons.

88.     HAMAS and its operatives also utilized these bases and facilities, *inter alia,* as depots for storage of weapons and explosives, to establish, maintain and operate a leadership command, organizational hierarchy and/or operational infrastructure, and/or offices/headquarters.

89.     Additionally, at all times relevant hereto, Syria provided HAMAS and its operatives with funding and training in terrorism activities, including training on the use of weapons and explosives.

90.     Upon information and belief, at all times relevant herein, the training in terrorism activities was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Defendant Syria.

91.     Upon information and belief, at all times relevant hereto, Defendant Syria also provided HAMAS and its leaders, officials, and operatives, with lodging, safe haven, and shelter permitting them to conduct their terrorist activities freely and unhindered.

92.     The duration, quantity, and quality Syria's material support, even if not

designated for specific attacks, greatly contributed to HAMAS' ability to carry out terrorist attacks.  HAMAS could not have carried out the lethal attack described in this complaint without Syria's support and sponsorship. Syria and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks, yet continue to support HAMAS.

93.     As a direct and proximate result of the provision of the material support to HAMAS by the Defendant Syria as described herein, hundreds of innocent civilians were killed and grievously injured by acts of terrorism committed by HAMAS.  Among the civilians murdered and wounded by HAMAS' terrorist attacks is Eitam Simon Henkin, whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages for the heinous act of terrorist murder committed upon the deceased and each of the plaintiffs, in amounts as shall be proven at the trial of the within action.

## COUNT I
### (Under 28 U.S.C. §1605A(c)
### on behalf of All Plaintiffs)

94.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

95.     As recounted above, the death of Eitam Simon Henkin was caused by a willful and deliberate act of terror committed by the Foreign Terrorist Organization, HAMAS, with the material aid and support of the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, and each of them, who through their agents, financed the attack, planned the attack and rendered material support to the activities of HAMAS that resulted in the death of Eitam Simon Henkin. Those agents were at all times acting with the scope of their agency and acted on the direction of and or with the material support of the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic.

96.     As a direct and proximate result of the willful, wrongful and intentional act of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, each of the Plaintiffs have endured extreme mental anguish, physical injury, pain and suffering, solatium, and loss of the affection, love and companionship of their loved father, son and brother, Eitam Simon Henkin, for which the Plaintiffs and each of them seek an award of damages and judgment against each of the Defendants, jointly and severally, to the fullest extent of the law.

97.     WHEREFORE, each of the Plaintiffs demand that judgment be entered, jointly and severally, against the Defendants, The Islamic Republic of Iran and the Syrian Arab Republic, and each of them, for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, emotional distress, and solatium in amount to be proven, and for their costs expended, including attorneys' fees, and as otherwise as permitted by this Court.

## COUNT II
## LOSS OF SOLATIUM
### (On behalf of all Plaintiffs)

98.     The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

99.     As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Defendants, their agents and instrumentalities, each of the Plaintiffs suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of the victims.

100.    Accordingly, each of the Plaintiffs bring claims for loss of solatium against the Defendants pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, the laws of the District of Columbia and/or California.

101.    WHEREFORE, each of the Plaintiffs demand that judgment be entered against the

Defendants in an amount to be proven for their compensatory damages, and otherwise as permitted by this Court.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (On behalf of all of the Plaintiffs)

102.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

103.    On October 1, 2015, members of HAMAS willfully, violently, and forcefully shot and killed Eitam Simon Henkin.

104.    The act of shooting and killing Eitam Simon Henkin constituted extreme and outrageous conduct on the part of HAMAS members, whose acts were funded and directed by the Islamic Republic of Iran and the Syrian Arab Republic.

105.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of HAMAS members, whose terrorist acts were funded and directed by the Islamic Republic of Iran and the Syrian Arab Republic, Plaintiffs suffered severe emotional distress, entitling them to compensatory damages.

106.    Each Plaintiff may assert a cause of action for intentional infliction of emotional distress against the Defendants in connection with the willful, wrongful, intentional, and reckless actions of HAMAS members.  Such cause of action may be asserted pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, the laws of the District of Columbia.

107.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants in an amount to be proven for their compensatory damages, and otherwise as permitted by this Court.

## COUNT IV
## PUNITIVE DAMAGES
### (Under 28 U.S.C. § 1605A(c)
### on behalf of all Plaintiffs)

108.    The Plaintiffs repeat and re-allege each and every allegation set forth above with

like effect as if alleged herein.

109.    The actions of the Islamic Republic of Iran, who has been committing, sponsoring, and supporting acts of international terror against Americans and others at least since 1979, and certainly since 1984 when it was designated as a State Sponsor of Terror; and the actions of the Syrian Arab Republic, who has been committing, sponsoring, and supporting acts of international terror against Americans and others at least since 1979, when it was designated as a State Sponsor of Terror are heinous in nature, politically motivated, and target the United States of America and the State of Israel, its citizens, residents and visitors,   render both Defendants, jointly and severally, liable for the heinous murder of Eitam Simon Henkin, thereby entitling each of the Plaintiffs being his family members, to an award of damages in accordance with the laws of the United States.

110.    The acts of the Defendants, and each of them, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life as above described was intended as a result by each Defendant. The family members of Eitam Simon Henkin are each victims of the acts of international terror committed by HAMAS with the material support of each of the Defendants. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C §1605A(c) the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

111.    The actions of HAMAS, as set forth hereinabove, were intentional and malicious and in willful, wanton, and reckless disregard of the Eitam Simon Henkin's rights and physical well-being. The actions of HAMAS were part of its ongoing and continuing campaign of terror

committed against citizens of the United States of America and the State of Israel in support of the political goals and aims of HAMAS to reject peace with Israel, to oppose US foreign policy in the region, and to use terror as a means of destroying the State of Israel, consistent with the positions of the Defendants, Iran and Syria, both of which are avowed enemies of Israel and oppose US foreign policy in the region. The acts of HAMAS were facilitated through funding, training, and material support by the Islamic Republic of Iran and the Syrian Arab Republic. In accordance with 28 U.S.C § 1605A(c) the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic, and each of them, are therefore liable for the actions of HAMAS, the Foreign Terrorist Organization and its members. In providing such funding, material support, direction, and training, the Islamic Republic of Iran and the Syrian Arab Republic were acting within the scope of its agencies as an instrumentality. Said agencies rendered material support to those actually carrying out the act above described. This Court has previously found the Defendants liable for the support of HAMAS and other Foreign Terrorist Organizations. Notwithstanding said findings, the Defendants Iran and Syria have continued to this day to sponsor and support terror. The Defendants, and each of them, must be punished by this Court for their continuing acts of sponsorship of terror. The Defendants, and each of them, must be held out as an example to the world that this Court will not countenance acts of terror, nor those who materially support and fund terror. A maximal award of punitive damages is requested as against all Defendants, jointly and severally, in accordance with the provisions of 28 U.S.C. §1605A(c), each of which are liable for punitive damages.

112.    WHEREFORE, the Plaintiffs pray that judgment be entered, jointly and severally, against the Islamic Republic of Iran and the Syrian Arab Republic, on behalf of each Plaintiff, in the amount of one billion US Dollars ($1,000,000,000) for each of them, as against each of the

Defendants, jointly and severally, and their costs herein expended.

## PRAYER FOR RELIEF

113.    WHEREFORE, Plaintiffs, request this Court find the Defendants, and each of them liable for the acts alleged herein and enter joint and several Judgment against the Defendants as follows:

114.    Awarding Plaintiffs compensatory damages against Defendants Islamic Republic of Iran and the Syrian Arab Republic, jointly and severally, in amounts set forth herein and as shall be determined at trial in accordance with evidence to be submitted to this Court;

115.    Awarding Plaintiffs solatium damages against the Defendants, jointly and severally, in amounts set forth herein and as shall be determined at trial in accordance with evidence to be submitted to this Court;

116.    Awarding Plaintiffs punitive or exemplary damages against Defendants Iran and Syria, jointly and severally, in the amount of one billion US dollars as punishment for their continued support for and sponsorship of acts of terror against Americans, and to send a message to the world that this Court will not countenance the continued sponsorship of terror by the Islamic Republic of Iran and/or the Syrian Arab Republic, in such amount and consistent with evidence as shall be determined at trial in accordance with evidence to be submitted to this Court;

117.    Awarding Plaintiffs prejudgment interest and post judgment interest as computed and calculated at the maximum rate allowable by law;

118.    Awarding Plaintiffs their costs and disbursements and reasonable allowances of reasonable fees for Plaintiffs counsel and experts and reimbursement of expenses;

119.    Leave to amend this Complaint as the interests of justice may allow; and

120.     Granting any and all such further relief as the Court may deem just and proper.


Dated: May 30, 2018

Respectfully submitted,

Heideman Nudelman & Kalik, P.C.
1146 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 463-1818

By: */s/Richard D. Heideman*
    Richard D. Heideman (DC Bar No. 377462)
    Noel J. Nudelman (DC Bar No. 449969)
    Tracy Reichman Kalik (DC Bar No. 462055)