UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ESTATE OF JUDAH HERZEL HENKIN,** *et al.*,

*Plaintiffs,*

v.

**THE ISLAMIC REPUBLIC OF IRAN,** *et al.*,

*Defendants.*

Case No. 1: 18-cv-1273-RCL

## MEMORANDUM OPINION

### I.     LIABILITY

This civil action arises from a brutal attack in Israel on October 1, 2015 involving Hamas terrorists who savagely murdered Eitam and Naama Henkin in front of their four minor children.

Filed on May 31, 2018, the Complaint was brought under 28 U.S.C. § 1605A by the parents and siblings of Eitam Henkin, seeking solatium and economic damages. ECF No. 1. Plaintiffs served defendants Islamic Republic of Iran ("Iran") and the Syrian Arab Republic ("Syria") through diplomatic channels on December 19, 2018, and January 22, 2019, respectively. ECF Nos. 14 and 15. Following defendants' failure to respond, and upon affidavit by plaintiffs' counsel, the Clerk of Court entered a default as to both defendants on May 6, 2019. ECF Nos. 17 and 18.

On August 27, 2020, plaintiffs filed for default judgment, asking this Court to: (1) "make independent findings of fact and conclusions of law that [Hamas] is responsible for the terrorist attack which killed Eitam Henkin"; (2) "take judicial notice of prior judgments and adopt the findings of fact and conclusions of law entered in the related cases" which have issued

judgments against Iran and Syria for materially supporting Hamas in carrying out terrorist attacks against U.S. citizens; (3) "make independent findings of fact and conclusions of law that Iran provided material support and sponsorship to [Hamas] during the relevant time period"; (4) "make independent findings of fact and conclusions of law" that "Syria also provided independent material support to [Hamas] which furthered the terror attack at issue"; (5) "enter Default Judgment against the Defendants, and each of them, both Iran and Syria as to liability on behalf of all Plaintiffs pursuant to the private cause of action found in 28 U.S.C. § 1605A(c)"; and (6) "find that the Plaintiffs suffered economic loss and damages and make compensatory and punitive damages awards commensurate with the damages evidence presented." Mem. in Supp. of Mot. for Default J., ECF No. 21-1 at 1–2; Mot. for Default J., ECF No. 21.

Following an evidentiary hearing convened on January 12 and 14, 2021, the Court, on July 12, 2021, issued a Findings of Fact and Conclusions of Law, ECF No. 29, a Memorandum Opinion, ECF No. 30, and a Finding of Liability, ECF No. 31. On July 27, 2021, plaintiffs moved to appoint a special master. ECF No. 33. This Court granted plaintiffs' motion on August 4, 2021, appointing Alan Balaran to serve as Special Master. ECF No. 34. On March 31, 2023, the Special Master filed his report and recommendation with the Court. ECF No 49. The parties have not filed any objections to the reports and recommendations within the statutorily allotted time. *See* Fed. R. Civ. P. 53(f)(2) (allowing a party to "file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served").

Having established liability, this Court examines the Special Master's recommended awards.

## II.     DAMAGES

Damages available under the FSIA "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c).  To demonstrate entitlement to damages, "a default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq,* 328 F.3d 680, 683–84 (D.C. Cir. 2003) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare,* 622 F.2d 1044, 1048 (1st Cir. 1980)). *See also* H.R. REP. No. 94-1487, at 26 (1976) (stating that 28 U.S.C. § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F[ed]. R. Civ. P.").  For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty or a preponderance of the evidence," and prove damages by a "reasonable estimate." *Hill,* 328 F.3d at 684.  For past losses, a plaintiff "prove the *fact of injury* with reasonable certainty" yet only "reasonably prove" the amount of damages. *Id.* at 684 (quoting *Samaritan Inns, Inc. v. District of Columbia,* 114 F.3d 1227, 1235 (D.C. Cir. 1997)) (emphasis added).

Plaintiffs have amply demonstrated that defendants' commission of acts of extrajudicial killing and provision of material support and resources for such killing was reasonably certain to —and, indeed, intended to—injure plaintiffs. *See Peterson v. Islamic Republic of Iran,* 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

Apropos of damage awards, the Court has received and reviewed the recommendations of the Special Master and **ADOPTS**, without discussion, all facts found and recommendations made that conform to the well-established damages frameworks articulated below. *See id.* at 51– 53; *Valore v. Islamic Republic of Iran,* 700 F. Supp. 2d 52, 83–87 (D.D.C. 2010).  The Court

will, however, discuss the two instances where the Special Master has recommended that awards be denied. Additionally, though the Special Master's report did provide a recommendation on a punitive damages award, the Court will discuss why such an award is appropriate here.

### A. Solatium

Solatium damages are designed "to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as well as the harm caused by the loss of the decedent's society and comfort." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402–03 (D.D.C. 2015) (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted).

In *Estate of Heiser v. Islamic Republic of Iran*, this Court surveyed damages awarded to the family members of the deceased terrorism victims and determined that, based on averages, that "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). This Court then established a framework whereby spouses of deceased victims receive approximately $8 million, parents receive $5 million, and siblings receive $2.5 million. *Id. See also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson*, 515 F. Supp. 2d at 51).

When applying this framework, this Court is mindful that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that upward deviations may be warranted in the face of "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal

interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27. Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683 (internal quotation marks and citation omitted).

The Special Master's awards for loss of solatium adhere to the *Heiser* guidelines and are grounded in sound evidentiary principles. *See* Special Master Rep., ECF No. 49, at 28–32. Those recommendations will not be disturbed.

**B.     Economic Damages**

In addition to seeking redress for the emotional trauma suffered because of Eitam's murder, his brothers Jacob and Joseph Henkin seek awards to compensate them for their financial losses.

Jacob Henkin claims his brother's death "significantly impacted" his career as a network administrator. He maintains that, after Eitam's death, he had to assume responsibility for his ailing father's care and spend time transporting Eitam and Naama's children between grandparents, resulting in a diminution of his work hours which adversely affected his "future career." Jacob Henkin Decl. ¶¶ 10, 16. Joseph Henkin contends that Eitam's death had affected his ability to concentrate and work at the pace he once did, resulting in his inability to have his book on Rhodesia published by a distinguished academic press. Joseph Henkin Decl. ¶ 16. He

predicts his diminished work capacity will result in his being denied tenure at an Israeli university. *Id.* ¶ 17. Each brother submitted an economic report projecting their past and future financial losses supporting their respective claims. *See* (Jacob Henkin Econ. Rep.; Joseph Henkin Econ. Rep.).

The Special Master, finding no fault with the methodology employed in those reports, nonetheless recommended both claims be rejected. Special Master Rep. at 33–37. He did so after finding Jacob's representations unsupported by the record and Joseph's claim too speculative to support a monetary award. *Id.* The Court agrees.

28 U.S.C. § 1605A, like its statutory predecessor 28 U.S.C. § 1605(a)(7), establishes a cause of action for economic damages resulting from an act of state-sponsored terrorism. To help formulate economic losses, "[t]he report of a forensic economist may provide a reasonable basis for determining the amount of economic damages." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012). Before recommending the adoption of a forensic analysis, the Special Master must first examine the methodological soundness of the calculations, mindful that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020), and then examine "the reasonableness and foundation of the assumptions relied upon by the expert," *Roth*, 78 F. Supp. 3d at 402, to safeguard against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11. The need for scrutiny becomes enhanced for those claims implicating "[d]epartures from actual pre-injury earnings," as they "must be justified and cannot be unduly speculative." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012).

The Court finds that the Special Master carefully scrutinized the record before issuing his findings. After undertaking its own review, the Court finds that Jacob Henkin's claim that Eitam's death caused him to devote work time to the care of his father to the detriment of his career is unsupported, if not refuted, by the testimony of his mother and siblings. Similarly, Jacob's attempt to forge a link between his stated "extraordinary grief, tremendous fear, mental anguish, emotional distress and general physical and mental weakness," Special Master Rep. at 17, and his bleak career prospects is grounded not in evidence, but in conjecture and supposition. *See Abedini v. Gov't of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 139 (D.D.C. 2019) (awarding lost wages to plaintiff who was medically diagnosed with post-traumatic stress disorder and clinical depression because of her brother's imprisonment).

Joseph Henkin's attempt to demonstrate a nexus between his brother's death and his "slowed" "pace of work" and failure to have his treatise published in a timely fashion is factually undermined by the letter he received from Cambridge University Press—a letter that, for all intents and purposes, constituted an indictment of his scholarship. Special Master Rep. at 18, 36. Legally, it is too speculative to support an award. *See Rezaian v. Islamic Republic of Iran*, 422 F. Supp. 3d 164, 182 (D.D.C. 2019) ("Attributing a specific dollar amount to a book deal that never progressed past discussions is far too speculative to pass muster in a lost earnings calculation.") (internal quotation marks omitted). Joseph's request to be compensated for losing a tenured position he was not offered suffers the same infirmity as it assumes facts not in evidence and anticipates events that may or may not occur.

The only evidence supporting the claims of Jacob and Joseph Henkin is their declarations. That a forensic expert took their statements at face value and imputed the

information into a statistical algorithm using leading economic indicators, without more, cannot ground a claim for economic losses.

The Special Master correctly denied both claims.

### C. Punitive Damages

Finally, the Special Master recommended the award of punitive damages.

Punitive damages serve to punish and deter the actions for which they are awarded, rather than to compensate the victim. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 31, 61 (D.D.C. 2009). In determining the proper punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (citing Restatement (Second) of Torts § 908)). Though there was some confusion among circuits as to whether punitive damages were available in 28 U.S.C. § 1065A actions for conduct occurring prior to the statute's enactment, such as the instant case, the Supreme Court recently answered the question in the affirmative. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it expressly authorized punitive damages under § 1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism.").

This District has developed three primary methods of calculating punitive damages in FSIA cases. The first, used more commonly in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Valore*, 700 F. Supp. 2d at 87–88. The second approach awards a fixed amount of $150 million per affected

family. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The third approach involves multiplying the total compensatory damages award by a factor of between one and five. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015). The multiplier approach is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy actor], [and] it is doubtful whether a large amount . . . would have the deterrent effect that it might have had in times past." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017) (quoting *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016)).

The nature of defendants' acts is heinous and the extent of the harm they caused is tragic. Defendants intentionally supported a proxy actor who specifically sought to wreak violence upon innocent civilians. Nevertheless, the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages. Given that punitive damages calculated as "a multiplier of three" of the compensatory damages is "the usual practice in state sponsored terrorism cases," *see Roth v. Islamic Republic of Iran*, No. 14-cv-01946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), and the plaintiffs have not offered a reason to depart from this practice, this Court concludes that the plaintiffs are entitled to punitive damages in the amount three times the compensatory damages, to be apportioned according to each plaintiff's share of the compensatory damages. *See id.* (awarding punitive damages equal to three times compensatory damages for Syria and Iran's sponsorship of a bombing in Jerusalem that killed fifteen people, including a plaintiff); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105–06 (D.D.C. 2017) (awarding punitive damages equal to three times compensatory damages for plaintiffs injured in a shooting in Israel); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23,

50–51 (D.D.C. 2012) (using a three times multiplier in a case involving a terrorist bombing); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (same); *Murphy*, 740 F. Supp. 2d at 82–83 (same).

## III.    CONCLUSION

This Court acknowledges plaintiffs' efforts to hold Iran and Syria responsible for this particularly repugnant act of terror. The Court concludes that defendants must be punished to the fullest extent legally possible for the murders of Eitam and Naama Henkin on October 1, 2015— a depraved act that destroyed the lives of the parties to this lawsuit. This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.

The Court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA's state-sponsored terrorism exception for $22,500,000.00 in compensatory damages and $67,500,000.00 in punitive damages, for a total award of $90,000,000.00.

A separate Order and Judgment consistent with these findings shall be entered this date.

**SO ORDERED.**

SIGNED this ___8th___ day of May, 2023.

Royce C. Lamberth
United States District Judge